BASSIM AL MANSOORY,

     Plaintiff,

vs.                                     CASE NO.  3:08-cv-72-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

     Defendant.
_____

## ORDER AND OPINION

This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for supplemental security income benefits ("SSI"). Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #17). Defendant filed his brief in support of the decision to deny disability benefits (Doc. #21). Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of reference dated April 11, 2008 (Doc. #13).  The Commissioner has filed the transcript of the proceedings (hereafter referred to as "Tr." followed by the appropriate page number).

The undersigned has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings.  Upon review of the record, the undersigned found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the undersigned in making his determinations.  Accordingly,

the matter has been decided on the written record. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED**.

## I. Procedural History

In the instant action, Plaintiff filed his current application for SSI on January 27, 2005, alleging a disability onset date of January 25, 2005 (Tr. 280-82). Plaintiff received benefits on an earlier SSI application, filed on December 19, 1994, until he left the United States to return to his home country of Iraq in October 2004 (Tr. 29-31, 228, 248, 280). The undersigned notes that much of the record evidence was submitted by Plaintiff in connection with his earlier SSI application and many of the exhibits are in duplicate form.

After being denied initially and upon reconsideration, Plaintiff requested a hearing before Administrative Law Judge Robert Droker (the "ALJ"). Subsequently, Plaintiff appeared and testified at an October 10, 2006 hearing, as did psychological medical expert Neil Lewis, Ph.D. ("Dr. Lewis") (Tr. 522-62). This hearing was continued until March 1, 2007 for the purpose of allowing Dr. Lewis the opportunity to review Plaintiff's prior psychological records from the 1990's (Tr. 560-61).[1] At the March 1, 2007 hearing, Dr. Lewis continued his testimony and vocational expert Dee D. Locascio, Ph.D. (the "VE") testified (Tr. 563). Plaintiff was represented by attorney Tracy Miller (Tr. 563). On June 20, 2007, the ALJ issued a hearing decision denying Plaintiff's disability claim (Tr. 17-27). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner (Tr. 10-12). Plaintiff now appeals.

---

[1]A prior hearing was held on April 13, 2006 (Tr. 538-45). This hearing was adjourned in order to perfect the record concerning Plaintiff's cessation of benefits due to his return to Iraq (*see* Tr. 538-45).

## II. Standard of Review

A plaintiff is entitled to disability benefits under the Social Security Act when he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 416.920(a)(4)(i-v);[2] *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

---

[2] Unless otherwise specified, all references to 20 C.F.R. will be to the 2008 edition.

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). It is a plaintiff's burden to provide the

relevant medical and other evidence that he or she believes will prove they suffer from disabling physical or mental functional limitations.  20 C.F.R. § 416.912(c).

## III. Discussion

Plaintiff is a forty-two year old male with limited past work experience as a translator (Tr. 352, 548-50).[3]  Plaintiff has a ninth grade education (Tr. 470).[4]  Plaintiff alleges he is unable to work due to mental retardation, depression, anxiety, and pain in his back, right knee, and left arm (Tr. 327, 332, 550, 555).  On June 20, 2007, the ALJ found Plaintiff suffers from the severe impairments of degenerative joint disease in his right knee and back, history of a left arm fracture, borderline intellectual functioning, and posttraumatic stress disorder ("PTSD") (Tr. 19-21).

The ALJ additionally found that, despite Plaintiff's impairments, he can perform a limited range of light work (Tr. 16-27).  Specifically, the ALJ found Plaintiff retains the residual functional capacity ("RFC") to perform simple, low stress, light work that does not require exposure to heights, heavy machinery, pulmonary irritants, more than limited contact with the public, limited communication in English, and only occasional postural maneuvers (Tr. 22-23).  A vocational expert testified that, given these restrictions, Plaintiff can nevertheless perform a significant number of jobs in the regional and national economy as a silver wrapper or photo processor (Tr. 579-85).  *See* United States Dep't of Labor, *Dictionary of Occupational Titles* §§ 318.678-018, 967.685-038 (4th Ed. 1991).

---

[3]The record reveals Plaintiff was born on May 17, 1966 and that he briefly worked as a translator for the United States' military in Iraq (Tr. 548; *see* Tr. 309-10).

[4]Plaintiff was educated in his native country of Iraq where he, apparently, obtained the equivalent of a high school education (*see* Tr. 42, 86, 193, 549).  Resolving any doubts in favor of Plaintiff, however, the ALJ found Plaintiff has at least a ninth grade education (Tr. 26).

Consequently, the ALJ found Plaintiff not disabled, as such term is defined by the Regulations, at the fifth step of the sequential evaluation process (Tr. 27).

Plaintiff raises three main issues on appeal. The undersigned will address each issue in turn.

### A.   Whether the ALJ Erred When Evaluating Plaintiff's Mental Impairment(s)

Plaintiff argues that the ALJ erred as a matter of law by not finding Plaintiff's mental impairment(s) either met or medically equaled Listing 12.05, metal retardation, and Listing 12.04, affective disorder, under 20 C.F.R. 404 Appx. 1 Sub. P (the "Listings") (Doc. #17 at 14-19). The undersigned, however, finds Plaintiff's contentions in this regard are not supported by the evidence of record. To the extent Plaintiff argues the ALJ erred in evaluating the overall limiting effects of Plaintiff's affective disorder(s), the undersigned is, likewise, not persuaded.

To illustrate, although Plaintiff received benefits on the 1994 SSI application because a prior ALJ found Plaintiff met the requirements of Listing 12.05, mental retardation, the instant ALJ found the longitudinal and further developed evidence of record does not warrant such a finding with regards to Plaintiff's current SSI application.

> To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. To equal a Listing, the medical findings must be at least equal in severity and duration to the listed findings.

*Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (*quotations and citations omitted*); *see also Wilkinson o/b/o Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987); 20 C.F.R. §§ 416.925, 416.926. The evidentiary standards for presumptive disability under the

listings are more stringent than for cases that proceed to other steps in the sequential evaluation process because the Listings represent an automatic screening in based on medical findings rather than an individual judgment based on all relevant factors in a claimant's claim. *See* 20 C.F.R. §§ 416.920, 416.926, 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *Wilkinson*, 847 F.2d at 662.

Pursuant to Listing 12.05, mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the development period (*i.e.* before age twenty-two). The required level of severity for this disorder is met when the requirements in subparagraphs A, B, C, or D are satisfied. Subparagraph A requires evidence of dependence on others for personal needs such as bathing and dressing.

Here, the record does not reflect that Plaintiff depends on others in order to be bathed and groomed. On Plaintiff's Function Report—Adult, Plaintiff represented that he showers and dresses himself (Tr. 319-20). Although Plaintiff stated in this report that he needs his wife to remind him to bathe and that she chooses his clothes for him, he did not state that he depends on her in order to be bathed and dressed (*see* Tr. 319-20). Plaintiff further represented that his wife helps him care for his hair "most of the time"; however, Plaintiff did not sate that he relies on his wife in order to perform said function (Tr. 320). On August 3, 2006, Plaintiff reported to a consultative psychologist that he is able to dress, groom, and feed himself without assistance (Tr. 479). Accordingly, the undersigned finds Plaintiff has not submitted evidence that would satisfy the requirements of subparagraph A.

Subparagraph B requires a **valid**, verbal, performance, or full scale I.Q. of 59 or less; and subparagraphs C and D require a **valid**, verbal, performance, or full scale I.Q. score of 60 through 70 and, in addition, require that the individual's low I.Q. results in **two** of the following:

1.  Marked restriction of activities of daily living; or
2.  Marked difficulties in maintaining social functioning; or
3.  Marked difficulties in maintaining concentration, persistence or pace; or
4.  Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, Appendix 1, 12.05(B), (C), (D) (*emphasis added*).

Here, although Plaintiff has shown consistent low I.Q. scores, substantial evidence of record reveals his scores are invalid because they are artificially depressed due to his limited ability to communicate in English and the cultural differences between the Middle East and the United States.[5]

Specifically, the results of a Wechsler Adult Intelligence Scale–Revised, administered to Plaintiff in 1997, revealed Plaintiff achieved a Full Scale I.Q. score of 62 (Tr. 503). The physician who administered this examination, Louis Legum, Ph. D. ("Dr. Legum"), acknowledged that Plaintiff's I.Q. score may have been artificially suppressed due to his language barrier and minimal exposure to United States' culture (Tr. 503). Nevertheless, Dr. Legum stated that he "suspected" Plaintiff's functioning was within the range of mental retardation (Tr. 504).

The ALJ contrasted Dr. Legum's aforementioned suspicion with a more recent psychological examination, conducted by Jerry Valente, Ph.D. ("Dr. Valente") (Tr. 20; *see*

---

[5]Plaintiff's Full Scale I.Q. scores range from 62 to 66 (*see* Tr. 465, 503).

*also* Tr. 463-85). On August 3, 2006, Dr. Valente administered to Plaintiff the Wechsler Adult Intelligence Scale–Third Edition (Tr. 465). The results of said examination revealed Plaintiff achieved a Full Scale I.Q. score of 66 (Tr. 465). Dr. Valente did not find Plaintiff's functioning was within the range of mental retardation, and he stated, "it is important to note that the test scores presented here are, in all likelihood, artificially depressed as a result of [Plaintiff's] limited ability to speak English as well as salient differences between Iraq and the United States" (Tr. 479). Dr. Valente went on to state that Plaintiff's test results "underestimate" his true level of intellectual functioning and assessed Plaintiff with "slight" limitations in all areas of ability to do work related activities, with the exception of Plaintiff's ability to respond appropriately to work pressures—which he assessed as "moderate" (Tr. 481-82).

At the March 1, 2007 hearing, the ALJ obtained testimony from psychological expert witness, Dr. Lewis, who indicated that in his opinion Plaintiff's aforementioned I.Q. scores are invalid due to cultural and linguistic differences (Tr. 572-73). Dr. Lewis further testified that Plaintiff's history does not indicate adaptive deficits manifesting before age 22 (Tr. 574). Dr. Lewis noted that Plaintiff served in the Iraqi army and that he served in the capacity as a translator for the United States' military in Iraq in 2003 (Tr. 574). Dr. Lewis testified that such activities are incompatible with mental retardation (Tr. 574).

The undersigned acknowledges that Plaintiff only served as a translator for a very short duration of time because he was unable to perform the job due to his limited ability to speak English and his alleged inability to handle the stress associated with the job (Tr. 309-10). Nevertheless, the fact Plaintiff worked as a welder for two years before he was 18 and served in the Iraqi army for five years subsequent to turning 18 supports Dr. Lewis'

opinion that Plaintiff's history is not indicative of someone who is mentally retarded, and manifested deficits in adaptive functioning before age 22 (*see* Tr. 42, 421, 502, 574).

Plaintiff, however, argues that "while he [Plaintiff] worked as a welder and a soldier, that was in the 1980's before he was tortured. [. . . ] And having worked in the past does not disprove mental retardation" (Doc. #17 at 17). The undersigned does not see how Plaintiff's allegation of being tortured supports his contention that he manifested deficits in adaptive functioning before age 22. Furthermore, although having worked in the past does not disprove mental retardation, the ALJ merely cited Plaintiff's past work history as one among many factors to support his finding that Plaintiff did not manifest deficits in adaptive functioning before age 22 (*see* Tr. 20-21).

When a medical professional functions as an expert witness in the course of an evidentiary hearing before an Administrative Law Judge, Social Security Ruling 96-6p designates such professional as a medical expert, and an Administrative Law Judge may rely upon testimony of a medical expert when evaluating the nature and extent of a claimant's impairments. SSR. 96-6p, 1996 WL 374180, at *4 n. 2 (1996); *see also Richardson*, 402 U.S. at 408.

In addition to noting Dr. Lewis' testimony, the ALJ pointed to Plaintiff's activities of daily living, his ability to obtain a drivers license, and his presentation at the hearing as evidence which undermines Plaintiff's contention that he is mentally retarded (Tr. 21; *see also* Tr. 551-53).[6] Moreover, Plaintiff himself reported to Dr. Legum that, while in his native

---

[6]Plaintiff's reported activities of daily living include helping with housework, doing laundry, taking out the trash, watching television, taking care of his wife by shopping for her, and going to the grocery store once per week (Tr. 320, 323, 551-53).

country of Iraq, he was a good student who was often excused from major tests because of excellent performance on preliminary exams (Tr. 502).

Based on the foregoing, the undersigned finds the ALJ relied on substantial evidence of record when determining Plaintiff did not meet the requirements enumerated in Listing 12.05 for showing mental retardation, *supra*.

Plaintiff additionally maintains that the ALJ erred by not finding he met or equaled the requirements of Listing 12.04, affective disorder, and that, at a minimum, the ALJ erred by improperly evaluating the limitations that stem from Plaintiff's affective disorder(s) (Doc. #17 at 17-19).

Listing 12.04 concerns affective disorders such as Plaintiff's posttraumatic stress disorder and depression and requires an individual to show <u>two</u> of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, Appendix 1, 12.04(B).

Here, the ALJ found Plaintiff's mental impairment(s) do not meet or medically equal Listing 12.04 because Plaintiff's level of functional loss stemming from said impairment(s) does not meet the required level of severity (*i.e.* marked) in two of the aforementioned categories (Tr. 21-22). Specifically, the ALJ found Plaintiff's degree of functional limitation resulted in: (1) no restrictions in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence or pace; and (4) no repeated episodes of decompensation of extended duration (Tr. 459).

In support of this finding, the ALJ cited a Psychiatric Review Technique, completed by state agency psychological consultant, Val Bee, Psy.D. ("Dr. Bee"), on August 1, 2005 (Tr. 449-61). Pursuant to said review, Dr. Bee found Plaintiff's degree of functional limitation resulted in: (1) mild restrictions in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence or pace; and (4) no repeated episodes of decompensation of extended duration (Tr. 459).

In addition, the ALJ noted that the aforementioned functional ratings were essentially corroborated by Dr. Lewis' testimony, wherein Dr. Lewis testified that he would rate Plaintiff's degree of functional limitation as: (1) mild restrictions in activities of daily living; (2) mild to moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence or pace; and (4) no repeated episodes of decompensation of extended duration (Tr. 559-60).

Moreover, the ALJ stated that his findings regarding Plaintiff's functional limitations are supported by Dr. Valente, who assessed Plaintiff a Global Assessment of Functioning ("GAF") score of 60 on August 3, 2006 (Tr. 22, 478; *see also* Tr. 399, wherein Eduardo A. Sanchez, M.D. ("Dr. Sanchez"), assessed Plaintiff's GAF score of 60 on March 2, 2005).[7]

---

[7]The Global Assessment of Functioning Scale was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale of 0-100. A GAF score of 41-50 describes "serious symptoms" and includes "serious impairment in the social, occupational or school functioning." A GAF score of 51-60 describes "moderate symptoms" and includes only moderate difficulty in functioning. A GAF score of 61-70 indicates "some mild symptoms," but generally functioning "pretty well, has some meaningful interpersonal relationships." A GAF score of 71-80 indicates that if symptoms are present, they are transient and expectable reactions to psycho-social stressors with no more than slight impairment in social, occupational or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM-IV, 32-34 (4th ed., American Psychiatric Assoc. 2000).

The ALJ did not attach significant weight to the opinion of Plaintiff's treating physician, Thomas Wikstrom, M.D. ("Dr. Wikstrom"), that Plaintiff suffered from "marked" limitations across all three categories of functioning, *supra,* and had experienced repeated episodes of decompensation (Tr. 22; *see also* Tr. 435-36). Generally, "substantial" or "considerable" weight must be given to the opinion of a treating physician. *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985). A treating physician's report, however, may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004).

Here, the ALJ noted that Dr. Wikstrom's conclusions regarding Plaintiff's functional limitations are neither supported by clinical findings, nor accompanied by rationale (Tr. 22; *see also* Tr. 435-36). Although Dr. Wikstrom checked several boxes related to Plaintiff's signs and symptoms of depression, Dr. Wikstrom did not explain how Plaintiff's signs and symptoms of depression result in marked limitations across all three relevant domains of functioning, *supra* (*see* Tr. 435). Dr. Lewis testified at the October 10, 2006 hearing that Dr. Wikstrom's treatment notes do not corroborate his assessed level of impairment and pointed out that it does not appear Dr. Wikstrom administered any kind of testing to Plaintiff (Tr. 558-60). Dr. Lewis stated that he believed the much more comprehensive assessments of the consultative examiners, *supra*, gives a more accurate depiction of Plaintiff's restrictions/limitations (Tr. 558-59). Moreover, Dr. Lewis noted that he was unable to find any evidence of Plaintiff experiencing episodes of decompensation (Tr. 560).[8]

---

[8]Upon cross-examination by Plaintiff's attorney, it was determined that Dr. Lewis lacked some medical records from the 1990's. Accordingly, the hearing was adjourned in order for Dr. Lewis to review said records (Tr. 560-62). At the March, 1, 2007 hearing, Dr. Lewis testified that, after reviewing said evidence, his opinions and prior testimony remain unchanged (Tr. 566-67).

Again, when a medical professional functions as an expert witness in the course of an evidentiary hearing before an Administrative Law Judge, Social Security Ruling 96-6p designates such professional as a medical expert, and an Administrative Law Judge may rely upon testimony of a medical expert when evaluating the nature and extent of a claimant's impairments. SSR. 96-6p, 1996 WL 374180, at *4 n. 2; *see also Richardson*, 402 U.S. at 408.

In addition, the ALJ noted that, if Plaintiff's limitations were as severe as Dr. Wikstrom suggested, he would expect to see similar observations from the consultative examiners, which he did not (Tr. 22). Moreover, the ALJ noted that, upon observing Plaintiff at the hearing, Plaintiff paid attention throughout the proceedings and otherwise displayed no concentration deficits (Tr. 22).

Based on the foregoing, the undersigned finds the ALJ relied on substantial evidence when finding Plaintiff did not meet or medically equal the requirements of Listing12.04, affective disorder, and when assessing Plaintiff's functional limitations stemming from said impairment(s).

**B.      Whether the ALJ Erred When Assessing Plaintiff's Residual Functional Capacity ("RFC")**

Plaintiff's next argument is that the ALJ's RFC determination is flawed because it is not based on substantial evidence of record (Doc. #17 at 20-21). As stated herein, the undersigned is not persuaded by this argument.

The ALJ determined that, despite all of his impairments, Plaintiff retained the RFC to perform a limited range of light work (Tr. 22).[9]  Specifically, the ALJ found Plaintiff could perform simple, low-stress light work that would not require exposure to heights, heavy machinery, pulmonary irritants, more than limited contact with the public, limited communication in English and more than occasional postural maneuvers (Tr. 22-23).  In making this determination, the ALJ represented that he considered all of Plaintiff's symptoms to the extent his symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence of record (Tr. 23).

The undersigned finds Plaintiff's RFC, as determined by the ALJ, is supported by substantial evidence of record.  First, the record supports the ALJ's determination that Plaintiff can lift up to 20 pounds occasionally (*see* Tr. 22).  Specifically, C.V. Lazo, M.D. ("Dr. Lazo"), performed a consultative physical examination of Plaintiff on March 30, 2005 (Tr. 420-22, 424-25).  Upon examination of Plaintiff's back and spine, Plaintiff had no pain on palpation and his range of motion ("ROM") was good (Tr. 421).  With regard to Plaintiff's upper extremities, Dr. Lazo found Plaintiff had mild deformity of his left elbow but no pain on palpation and good ROM (Tr. 422).  Plaintiff's grip strength was 5/5 bilaterally and his arm strength was 4/5 bilaterally (Tr. 422).  Dr. Lazo noted that plaintiff had a normal gait and could heel and toe walk, tandem walk, and squat (Tr. 420-25).  Plaintiff was able to lift 10 pounds with each hand, although he did complain of some discomfort in his left forearm while lifting weights (Tr. 422).  In addition, Plaintiff's Range of Motion Report reflects full

_____

[9]According to Social Security Ruling 83-10, light work requires the ability to lift and carry 20 pounds occasionally and up to 10 pounds frequently, sitting up to six hours of an eight-hour workday, and standing/walking six or more hours in an eight-hour workday.  SSR 83-10, 1983 WL31251, at *5 (S.S.A. Nov. 30, 1982).

ROM across all domains (Tr. 424-25).

With regards to Plaintiff's credibility, the ALJ stated that he found Plaintiff's reports of debilitating pain that precludes all work activity is not credible (Tr. 24). In support of his credibility finding, the ALJ cited the aforementioned findings of Dr. Lazo, Plaintiff's testimony concerning his activities of daily living, *supra*, and the fact that Plaintiff has not pursued any medical treatment for his alleged disabling impairments (Tr. 24). The ALJ pointed out (and the undersigned notes) that, while Plaintiff sought medical treatment for physical pain in the mid-1990's, subsequent to1997 Plaintiff has not sought any medical treatment for pain (*see e.g.* Tr. 68-164, 175-86, 363-527).

If an ALJ gives at least three reasons for discrediting a plaintiff's subjective complaints of pain, a court may find the ALJ properly discredited the subjective pain testimony. *See Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989). As stated herein, the undersigned finds the ALJ properly discounted Plaintiff's allegations of debilitating pain which precludes all work activity.

Furthermore, state agency medical advisors who considered the medical evidence, including Dr. Lazo's report, indicated that plaintiff could stand or walk for six hours, sit for six hours, and push and pull, but would need limited exposure to hazards and some postural limitations (Tr. 426-33, 437-44). The ALJ accepted these reports in finding Plaintiff can perform a limited range of light work. The ALJ's acceptance of these assessments provides sufficient consideration of Plaintiff's specific functional limitations. Also, the evidence does not indicate that Plaintiff has significant limitations in use of his arms or in

dexterity or manipulation, as noted *supra*.[10]

Based on the foregoing, the undersigned finds the ALJ's RFC determination is based on substantial evidence of record.

**C.    Whether Substantial Evidence of Record Supports the ALJ's Finding that a Substantial Number of Jobs Exist in the Economy that Plaintiff Can Perform Despite his Limitations**

Plaintiff's final argument is that the VE's testimony was not reliable; thus, the ALJ's determination that there are a significant number of jobs in the economy that Plaintiff can perform despite his limitations is not based on substantial evidence (Doc. #17 at 17-19). Plaintiff primarily contends that the ALJ's reliance on the VE's testimony was contrary to SSR 00-4p, which requires the ALJ to obtain an explanation from the VE when there is a conflict between the VE's job testimony and the job information provided in the DOT  (Doc. #17 at 21-23); *see also* SSR 00-4p, 2000 WL 1898704 (S.S.A. Dec. 4, 2000)).

Plaintiff asserts that there was in fact such a conflict in the instant case (Doc. #17 at 22-23).  Specifically, Plaintiff maintains that, while the ALJ found that Plaintiff had the RFC to perform simple tasks, the jobs identified by the VE (*i.e.* silver wrapper and photo processor) involve a reasoning level of two or three under the DOT, and these levels of reasoning are inconsistent with Plaintiff's RFC to perform simple tasks (Doc. #17 at 22-23).

A reasoning level of three, is defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." United States Dep't of Labor, *Dictionary of Occupational Titles*, App. C § III (U.S. Dep't of

---

[10]Dr. Valente noted that Plaintiff had "mild hand tremors" (Tr. 463).

Labor 4th ed. 2000).  A job that is rated as having a reasoning level of one requires the ability to "[a]pply commonsense understanding to carry out simple one or two-step instructions," and a job that is rated as having a reasoning level of two requires the ability "[a]pply commonsense understanding to carry out detailed *but uninvolved* written or oral instructions."  *See id. (emphasis added)*.

Here, the undersigned does not find the ALJ's assessment that Plaintiff is limited to performing "simple tasks" would support a conclusion that Plaintiff is incapable of performing a position with a reasoning level of two.  *See Money v. Barnhart*, 91 Fed. Appx. 210, 214-15 (3rd Cir. 2004) (finding reasoning level of two does not contradict the mandate that work be simple, routine, and repetitive).[11]  It is evident, however, that the VE's testimony that Plaintiff (who the ALJ limited to performing "simple tasks") could perform the job of photo processor conflicts with the reasoning level of three provided by the DOT.  *See Pritchett v. Astrue*, No. 06-5130, 2007 WL 867182, at *2 (10th Cir. March 23, 2007) (remanding case to ALJ due to apparent conflict between VE's assessment that Plaintiff, who was limited to "simple, repetitive and routine work" could return to her past work and DOT's classification of past work as requiring a reasoning level of three); *see also Leonard v. Astrue*,  487 F. Supp. 2d 1333, 1339-40 (M.D. Fla. 2007).

Defendant argues that it is inappropriate to compare RFC mental limitations to general education development ("GED") levels of reasoning under the DOT because GED levels relate to the vocational factor of education, rather than the mental demands of a job (which must be compared to the RFC) (Doc. #21 at 13).  Contrary to Defendant's argument,

---

[11]Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

however, this Court has found the GED reasoning levels do indeed pertain to the work requirements of a job, and are relevant where an ALJ limits a plaintiff to performance of simple tasks.

In fact, the exact argument that Defendant is trying to advance before this Court has already been rejected by the District Court.  *See Leonard*, 487 F. Supp. 2d at 1343 (rejecting the argument that GED levels relate only to the educational level needed to perform the job and not the job's work requirements).  Defendant has failed to address the aforementioned line of cases and has failed to cite any case law in support of his argument that GED reasoning levels merely relate to the educational level needed to perform a job and have no relation to a job's mental demands.

Based on the foregoing, the undersigned finds the ALJ's determination that Plaintiff can perform the job of photo processor is not supported by substantial evidence because the ALJ did not ask the VE to reconcile the differences between her testimony and the DOT.  Accordingly, the ALJ erred by finding Plaintiff can perform the job of photo processor.  The undersigned, nevertheless, finds said error is harmless because the photo processor job was not the only job the ALJ found Plaintiff can perform despite his limitations.  The ALJ additionally found Plaintiff can perform the job of silver wrapper.

Plaintiff, however, asserts that, since the silver wrapper job is not usually a stand-alone position, there are not a significant number of these jobs available in the economy (Doc. #17 at 21-22).  The undersigned finds the ALJ properly factored in the level of erosion of the occupational base that the VE testified would result from the fact the silver wrapper job is not typically a stand-alone position, and that after factoring in said erosion

a substantial number of these jobs still remain.

Specifically, the VE testified that there were approximately 500,000 silver wrapper positions in the national economy and approximately 35,000 of such jobs in Florida (Tr. 581). While conceding that silver wrapping is often a component of another job, the VE testified that one third of the silver wrapper positions would be stand-alone jobs (Tr. 582). This would still leave some 11,600 jobs in Florida, although, as the VE stated, some of these would be in a job-coaching setting (Tr. 582). Accordingly, the ALJ reduced said amount by an additional two thirds, finding essentially that 3,333 stand-alone silver wrapper jobs exist in the state of Florida (*see* Tr. 27).

The Eleventh Circuit has held that 1,600 jobs existing regionally is sufficient to be considered a "substantial number" of jobs available in the economy. *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987). Accordingly, the undersigned finds the ALJ's determination that a substantial number of jobs exist in the national and regional economy that Plaintiff can perform despite his limitations is supported by substantial evidence.

### IV. Conclusion

Upon due consideration, the undersigned finds the decision of the Commissioner was decided according to proper legal standards and is supported by substantial evidence. As neither reversal nor remand is warranted in this case, and for the aforementioned reasons, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file. Each party shall bear its own fees and costs.

**DONE AND ORDERED** at Jacksonville, Florida this 26th day of March, 2009.

Copies to all counsel of record

*Thomas E. Morris*

**THOMAS E. MORRIS**
United States Magistrate Judge